**FORM B104  (08/07)**                                                   2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>SHAW BLACKSTONE, LLC. | **DEFENDANTS**<br>EZRI NAMVAR |
|---|---|

RECEIVED
AUG 11 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>The Gersh Law Firm, Inc., Rochelle A.Herzog<br>15821 Ventura Blvd., #515, Encino, CA 91436<br>818.536.5700 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only) | **PARTY** (Check One Box Only) |
|---|---|
| ☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor     ☐ Other<br>☐ Trustee | ☑ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint to Except Debts from Discharge Pursuant to 11 U.S.C. §523(a)(2)(A) and §523(a)(6).

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**

☐ 11-Recovery of money/property - §542 turnover of property

☐ 12-Recovery of money/property - §547 preference

☐ 13-Recovery of money/property - §548 fraudulent transfer

☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**

☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud

☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☐ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**

☐ 71-Injunctive relief – imposition of stay

☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**

☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**

☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.

☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 1,309,619.00 |

Other Relief Sought

ORIGINAL

FORM B104 (08/07), page 2                                                        2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR**<br>EZRI NAMVAR | **BANKRUPTCY CASE NO.**<br>LA 08-32349 | |
| **DISTRICT IN WHICH CASE IS PENDING**<br>Central District of California | **DIVISIONAL OFFICE**<br>Los Angeles | **NAME OF JUDGE**<br>Barry Russell |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)**<br>*Rochelle A. Herzog* | | |
| **DATE**<br>8/10/09 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>Roxhelle A. Herzog, Esq. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

**PROOF OF SERVICE**
*In Re: Ezri Namvar*
*2:08-bk-34349-BR*

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 15821 Ventura Boulevard, Suite 515, Encino, California 91436. On August 11, 2009, I served the following document(s) described as **ADVERSARY PROCEEDING COVER SHEET** on all interested parties to this action, as follows:

☒     by placing ☐ the original ☒ a true copy
thereof enclosed in sealed envelopes addressed as follows:

SEE ATTACHED SERVICE LIST

☒     **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with THE GERSH LAW FIRM, INC.'s practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Encino, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐     **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to _____ for delivery to the above address(es).

☐     **BY FAX:** I caused the above-referenced document to be transmitted via facsimile from Fax No._____ to Fax No._____ directed to _____. The facsimile machine I used complies with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2005(1), I caused the machine to print a record of the transmission, a copy of which is attached to this declaration.

☒     **BY E-MAIL:** I caused the above-referenced document to be transmitted via e-mail from srobertson@gershlegal.com to service list below.

☐     **BY PERSONAL SERVICE:** I personally delivered such envelope by hand to the offices of the addressee(s).

☒     [State]   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐     [Federal] I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 11, 2009, at Encino, California.

SONJA ROBERTSON

# SERVICE LIST

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 East Temple St., Suite 1660
Los Angeles, CA 90012
***Hand Delivery***

**Served via U.S. Mail**

Namco Capital Group, Inc.
12121 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025
Debtor

Ezri Namvar
12121 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025
Debtor

Ilana Namvar
12121 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025

Leonard M. Shulman
Melissa R. Davis
26632 Towne Center Drive, Suite 300
Foothill Ranch, CA 92610
Atty for Official Committee of Unsecured
Creditors re Ezri Namvar

U.S. Trustee Offices
725 South Figueroa  Street, Suite 2600
Los Angeles, CA 90017

Gillian N. Brown
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067

Stephen F. Biegenzahn
Law Offices of Stephen F. Biegenzahn
4300 Via Marisol, Suite 764
Los Angeles, CA 90042
Atty of Ezri Namvar

Joel Samuels
Sidley, Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013

## Served Via E-Mail

- Howard J. Weg
- Richard K. Diamond
- 
- 

hweg@pwkllp.com
rdiamond@dgdk.com;eisrael@dgdk.com;
uraan@dgdk.com;

(Attorneys for R. Todd Nielson, Ch. 11 Trustee)
- Gillian N. Brown
- Shirley Cho
- 

gbrown@pszjlaw.com
scho@pszjlaw.com

- Russell Clementson
- Melissa Davis
- 

russell.clementson@usdoj.gov
mdavis@shbllp.com

(Official Unsecured Creditors' Committee)
- Sanford Frey
- Eric P Israel
- Stuart I. Koenig
- Dare Law
- Jennifer Leland
- Monserrat Morales
- David M. Poitras

Sfrey@cmkllp.com
eisrael@dgdk.com
Skoenig@cmkllp.com
dare.law@usdoj.gov
jleland@pwkllp.com
mmorales@pwkllp.com
dpoitras@jmbm.com

THE GERSH LAW FIRM, INC.

THE GERSH LAW FIRM, INC.

| | | |
|---|---|---|
| • | Bruce S. Schildkraut | bruce.schildkraut@usdoj.gov |
| • | Benjamin Seigel | Seigel@buchalter.com; IFS_filing@buchalter.com |
| • | David B. Shemano | dshemano@pwkllp.com |
| • | Beth Ann R Young | bry@lnbrb.com |
| • | Ron Maroko | ron.maroko@usdoj.gov |
| • | R. Todd Neilson | tneilson@ecf.epiqsystems.com;vdoran@lecg.com; sgreenan@lecg.com |
| • | Sanford Frey | Sfrey@cmkllp.com |
| • | Stuart Koenig | Skoenig@cmkllp.com |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Jeffrey F. Gersh, Esq., SBN 87124<br>Rochelle A. Herzog, Esq., SBN 123134<br>The Gersh Law Firm, Inc.<br>15821 Ventura Blvd., #515<br>Encino, CA 91436<br>818.536.5700<br>818.981.4618<br><br><br>*Attorney for Plaintiff* SHAW BLACKSTONE, LLC. | RECEIVED<br>AUG 1 1 2009<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY _____ Deputy Clerk |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re: EZRI NAMVAR | CHAPTER 11 |
|---|---|
| | CASE NUMBER LA 08-32343 BR |
| Debtor. | ADVERSARY NUMBER |
| SHAW BLACKSTONE, LLC.<br><br>Plaintiff(s),<br><br>vs.<br><br>EZRI NAMVAR<br><br>Defendant(s). | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*<br><br>**SUMMONS AND NOTICE OF**<br>**STATUS CONFERENCE** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| Hearing Date: | Time: | Courtroom: 1668 | Floor: 16th |
|---|---|---|---|

☒  **255 East Temple Street, Los Angeles**          ☐  **411 West Fourth Street, Santa Ana**

☐  **21041 Burbank Boulevard, Woodland Hills**     ☐  **1415 State Street, Santa Barbara**

☐  **3420 Twelfth Street, Riverside**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**


By: _____
            *Deputy Clerk*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009 (COA-SA)*                                                    **F 7004-1**

ORIGINAL

**PROOF OF SERVICE**
*In Re: Ezri Namvar*
*2:08-bk-34349-BR*

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 15821 Ventura Boulevard, Suite 515, Encino, California 91436. On August 11, 2009, I served the following document(s) described as **SUMMONS AND NOTICE OF STATUS CONFERENCE** on all interested parties to this action, as follows:

☒      by placing ☐ the original ☒ a true copy
thereof enclosed in sealed envelopes addressed as follows:

SEE ATTACHED SERVICE LIST

☒      **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with THE GERSH LAW FIRM, INC.'s practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Encino, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐      **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to _____ for delivery to the above address(es).

☐      **BY FAX:** I caused the above-referenced document to be transmitted via facsimile from Fax No._____ to Fax No._____ directed to _____. The facsimile machine I used complies with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2005(1), I caused the machine to print a record of the transmission, a copy of which is attached to this declaration.

☒      **BY E-MAIL:** I caused the above-referenced document to be transmitted via e-mail from srobertson@gershlegal.com to service list below.

☐      **BY PERSONAL SERVICE:** I personally delivered such envelope by hand to the offices of the addressee(s).

☒      [State]    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐      [Federal] I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 11, 2009, at Encino, California.

_____
SONJA ROBERTSON

THE GERSH LAW FIRM, INC.

1

# SERVICE LIST

2

3  The Honorable Barry Russell
   U.S. Bankruptcy Court                           **Served via U.S. Mail**
   Roybal Federal Building
4  255 East Temple St., Suite 1660
   Los Angeles, CA 90012
5  ***Hand Delivery***

6  Namco Capital Group, Inc.                        Ezri Namvar
   12121 Wilshire Blvd., Suite 1400                 12121 Wilshire Blvd., Suite 1400
7  Los Angeles, CA 90025                            Los Angeles, CA 90025
   Debtor                                           Debtor

8
   Ilana Namvar                                     Leonard M. Shulman
9  12121 Wilshire Blvd., Suite 1400                 Melissa R. Davis
   Los Angeles, CA 90025                            26632 Towne Center Drive, Suite 300
10                                                  Foothill Ranch, CA 92610
                                                    Atty for Official Committee of Unsecured
11                                                  Creditors re Ezri Namvar

12 U.S. Trustee Offices                             Gillian N. Brown
   725 South Figueroa  Street, Suite 2600           Pachulski Stang Ziehl & Jones, LLP
13 Los Angeles, CA 90017                            10100 Santa Monica Blvd., Suite 1100
                                                    Los Angeles, CA 90067

14 Stephen F. Biegenzahn                            Joel Samuels
   Law Offices of Stephen F. Biegenzahn             Sidley, Austin LLP
15 4300 Via Marisol, Suite 764                      555 West Fifth Street, Suite 4000
   Los Angeles, CA 90042                            Los Angeles, CA 90013
16 Atty of Ezri Namvar

17

18 **Served Via E-Mail**

19 •     Howard J. Weg             hweg@pwkllp.com
   •     Richard K. Diamond        rdiamond@dgdk.com;eisrael@dgdk.com;
20                                 uraan@dgdk.com;
   •
21     (Attorneys for R. Todd Nielson, Ch. 11 Trustee)
   •     Gillian N. Brown          gbrown@pszjlaw.com
22 •     Shirley Cho               scho@pszjlaw.com
   •
23 •     Russell Clementson        russell.clementson@usdoj.gov
   •     Melissa Davis             mdavis@shbllp.com
24 •
     (Official Unsecured Creditors' Committee)
25 •     Sanford Frey              Sfrey@cmkllp.com
   •     Eric P Israel             eisrael@dgdk.com
26 •     Stuart I. Koenig          Skoenig@cmkllp.com
   •     Dare Law                  dare.law@usdoj.gov
27 •     Jennifer Leland           jleland@pwkllp.com
   •     Monserrat Morales         mmorales@pwkllp.com
28 •     David M. Poitras          dpoitras@jmbm.com

| | | |
|---|---|---|
| • | Bruce S. Schildkraut | bruce.schildkraut@usdoj.gov |
| • | Benjamin Seigel | Seigel@buchalter.com; IFS_filing@buchalter.com |
| • | David B. Shemano | dshemano@pwkllp.com |
| • | Beth Ann R Young | bry@lnbrb.com |
| • | Ron Maroko | ron.maroko@usdoj.gov |
| • | R. Todd Neilson | tneilson@ecf.epiqsystems.com;vdoran@lecg.com; sgreenan@lecg.com |
| • | Sanford Frey | Sfrey@cmkllp.com |
| • | Stuart Koenig | Skoenig@cmkllp.com |

THE GERSH LAW FIRM, INC.

Jeffrey F. Gersh, State Bar No. 87124
Rochelle A. Herzog, State Bar No. 123134
**THE GERSH LAW FIRM, INC.**
15821 Ventura Boulevard, Suite 515
Encino, California 91436
Telephone: (818) 536-5700
Facsimile: (818) 981-4618

FILED

AUG 11 2009

CLERK U.S BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

Attorneys for Creditor SHAW BLACKSTONE, LLC, a
California Limited Liability Company

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### [LOS ANGELES DIVISION]

| | |
|---|---|
| In re | Case No. LA 08-32349 BR |
| EZRI NAMVAR | Chapter 11 |
| Debtor. | ADV. NO. |
| SHAW BLACKSTONE, LLC., a California limited liability company, | **COMPLAINT TO EXCEPT DEBT FROM DISCHARGE PURSUANT TO 11 U.S.C. §523(a)(2)(A) and §523 (a)(6)** |
| Plaintiff, | |
| v. | |
| EZRI NAMVAR | Dept.: Room 1668 |
| Defendant | |

Plaintiff, Shaw Blackstone, LLC a California limited liability company ("SB" or "Plaintiff") hereby complains against Defendant Ezri Namvar ("Defendant" or "Namvar") as follows:

## **GENERAL ALLEGATIONS**

1.      On December 22, 2008, an involuntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Code was filed against Namvar in the above Court. On January 29, 2009, an order for relief was entered.

1

**ORIGINAL**

**COMPLAINT TO EXCEPT DEBT FROM DISCHARGE**

THE GERSH LAW FIRM, INC.

2.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§1334 and 1057. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

3.     At all times herein relevant Plaintiff SHAW BLACKSTONE, LLC ("SB" and/or "Plaintiff") was, and is, a limited liability company duly organized and existing under the laws of the State of California and was and is conducting business in the County of Los Angeles, State of California.

4.     Plaintiff is informed and believes and thereon alleges that at all times herein relevant Defendant EZRI NAMVAR ("Namvar") was, and is, an individual living and conducting business in the County of Los Angeles, State of California. Plaintiff is further informed and believes that Namvar is the President of Namco and the owner of 64% of Namari, which owns 64% of Toyram, which in turn owns 100 % of LA Hotel Venture LLC, which is the owner of the Marriott Hotel in downtown Los Angeles (the "Marriott"). Namvar is also the guarantor of the debt owed to SB by Namco.

5.     In October 2008, SB agreed to extend the terms for repayment of a previously funded loan of approximately $1,290,000 to Namco and to replace the original note with a new note. Said loan is evidenced by a (new) Promissory Note dated October 7, 2008 in favor of SB in the amount of $1,290,000 (the "Note"). The terms of the Note provide that it shall bear interest at the rate of 7¾% interest per annum calculated by applying the ratio of the annual interest rate over a year of 360 days multiplied by the outstanding principle balance, multiplied by the number of days the principal balance is outstanding based on 30 days per month.

6.     The Note further provides that interest only on the unpaid principal amount outstanding shall be payable on the first day of each calendar month beginning on November 1, 2008 without notice, grace, demand, deduction, or offset, until and including the maturity date (October 7, 2009) on which date the principal amount hereof, together with all accrued and unpaid interest payable by the undersigned shall be due and payable.

THE GERSH LAW FIRM, INC.

2

**COMPLAINT TO EXCEPT DEBT FROM DISCHARGE**

THE GERSH LAW FIRM, INC.

1    7.    In addition, the Note provides that notwithstanding any other provision

2    of the Note, either party may notify the other for the payoff in writing at least thirty

3    (30) days before the undersigned shall become obligated to repay the principal sum of

4    the Note.  A true and correct copy of the Note is attached hereto as Exhibit "1".

5    8.    On or about October 7, 2008, Namvar executed a Guarantee Agreement

6    irrevocably and unconditionally guaranteeing the payment and performance of all

7    obligations of Namco under the terms of the Note. (the "Guarantee")  A true and

8    correct copy of the Guarantee is attached hereto as Exhibit "2".

9    9.    Among other things, the Guarantee provides that the obligations of

10   Guarantor (Namvar) under the Guarantee are independent of the obligations of

11   Namco and of any other guarantor or surety.  The Guarantee further provides that if

12   any event of default should occur at any time, and in the sole opinion of the Lender

13   (SB), the ability of either the Borrower (Namco) or the Guarantor (Navar) to perform

14   their respective obligations to the Lender (SB) shall have become impaired, then the

15   Lender shall have the right to declare the entire amount equal to the entire amount of

16   Namco's obligations to be due and payable under the Guarantee, whereupon same

17   shall become immediately due and payable by the Guarantor.  Pursuant to Paragraph

18   6, an event of default occurs when:

19   (a)(i)  any obligations of the Borrower are not paid and/or performed when due;

20   or

21   (a)(ii)    any monetary obligation of either Borrower or Guarantor to any

22   person is not paid when due and Lender in its sole discretion deems such non-

23   payment to be material;

24                    * * * * * * *

25   (c)    any event shall occur under any instrumental agreement relating to any

26   such indebtedness of the Borrower or the Guarantor, which would cause, or would

27   permit the holder of such indebtedness, or trustee on its behalf, to cause such

28   indebtedness to become due prior to its date of maturity;

3

**COMPLAINT TO EXCEPT DEBT FROM DISCHARGE**

* * * * * * *

(e)     the financial responsibility of the Borrower or the Guarantor, shall, in the sole opinion of the Lender become impaired or unsatisfactory, or there shall have occurred any material adverse change as determined by the Lender in its sole discretion, in the financial condition of the Borrower or the Guarantor.

10.     On September 26, 2008, Namvar executed an Assignment and Security Agreement ("Security Agreement") in favor of SB, which assigned to SB as security for the performance of all obligations of Namco and Namvar under, or arising out of or in connection with the Note, a security interest of 5% in Namari including, among other rights and interests, all payments of whatever nature to become due to Namvar, and all of Namvar's respective right, title, and interest in Namari. See Paragraph 1of the Security Agreement attached hereto as Exhibit "3".

11.     Paragraph 3 of the Security Agreement provides that SB is entitled to exercise all the rights, powers and remedies (whether vested in it by the Agreement or by law) for the protection and enforcement of its rights with respect to the collateral in addition to other rights agreed to be commercially reasonable, including the right to assume outright ownership of the collateral and receive the full benefits of ownership. See Paragraph 3(c).

12.     Paragraph 10(x) of the Security Agreement affirms that Namari owns a 100% interest in Toyram, which owns a 100% interest in LA Hotel Venture, LLC. Plaintiff is informed and believes and thereon alleges that title to the Marriott is vested in LA Hotel Venture, LLC and that LA Hotel Venture is itself in Bankruptcy. Plaintiff is further informed and believes and thereon alleges that GE Capital has foreclosed its deed of trust and taken possession of the Marriott.

13.     On October 24, 2008 SB filed a UCC Financing Statement ("UCC-1") listing Namvar, Namari, Toyram and LA Hotel Venture as Debtors. A true and correct copy of the UCC-1 is attached hereto as Exhibit "4".

///

THE GERSH LAW FIRM, INC.

4

COMPLAINT TO EXCEPT DEBT FROM DISCHARGE

# **FIRST CLAIM FOR RELIEF**

(Non-Dischargeability of Debt)
11 U.S.C. 523(a)(2)(A)

14.     Plaintiff realleges and incorporates herein by this reference each and every allegation contained in Paragraphs 1 through 13, inclusive as though fully set forth herein.

15.     In September, 2008, Namvar requested that SB extend the time and renew the terms for repayment of a previously funded loan.  Namvar further requested that SB's principal Mark  Tavakoli ("Tavakoli") speak with his brother, Hooshang "Sean" Namvar ("Sean") to make the necessary arrangements for the renewal of credit.

16.     At a meeting in September, 2008, Sean, acting upon the instructions of Namvar and acting for himself and on behalf of Namvar and Namco Capital Group, Inc. ("Namco"), represented to Tavakoli and David Zadeh ("Zadeh") of SB that : (1) the total debt against the Marriot was $85,000,000; (2) the market value of the Marriott was $130,000,000; (3) the Marriott was financially viable; (4) the ownership of the Marriott was not in default on any of the debts on the property and there was no danger of going into default; (5) Namco had many millions of dollars in assets; (6) Namco would repay the loan within one year and if Namco failed to do so, the guarantor ( Namvar) would personally pay the entire obligation within one (1) year.

17.     In reasonable and justifiable reliance on the foregoing representations of Namco's principal, SB agreed to forbear from taking any collection efforts and to extend the time for repayment of the $1,290,000 loan to Namvar in exchange for Namvar's personal guarantee and the assignment of a 5% security interest in Namari, the limited liability company with a 64% ownership interest in the Marriott.

18.     The representations made by Namvar, through Sean, acting as his agent and upon his instructions, were knowingly and intentionally false when made to Tavakoli and Zadeh and were made with the intention of inducing SB to extend the

THE GERSH LAW FIRM, INC.

5

**COMPLAINT TO EXCEPT DEBT FROM DISCHARGE**

time for repayment and renew the previously funded loan in the amount of $1,290,000 to Namvar and his corporation. The true facts were that: (1) Namco was already in default of a debt secured by the Marriott and was in imminent danger of being sued by General Electric Capital Corporation ("GE") for the default (SB is informed and believes and thereon alleges that GE commenced case No. BC401948 on November 13, 2008); (2) the value of the Marriott was substantially less than $130,000, 000 and continues to be further diminished; (3) Namco owed many millions of dollars to other creditors and investors and would be unable to repay the loan as promised (There are currently more than 17 lawsuits pending against Namvar and his various companies); (4) Namvar was already having serious financial difficulties and would not be able to repay the loan to SB; and  (5) Namco's very first interest payment of October 1, 2008 was deficient.  SB is informed and believes and thereon alleges that neither Namvar, Namco or Sean had any intention of repaying the loan made by SB.  Had SB known that the GE loan was in default or in danger of defaulting, that Defendants' true intention was to defraud SB and that Namvar had no intention of repaying the loan, it would not have extended the payment terms on the loan to Namco and would have instead moved forward to collect the entire balance due and owing under the original note.

19.    As a proximate result of Namvar's misrepresentations, SB has been damaged in the principal amount of $1,290.000 plus interest thereon.

20.    In acting as alleged above, Namvar acted despicably and with a conscious disregard for SB's rights.  By making intentionally false representations in order to induce SB to extend the time for payment of the $1,290,000 loan evidenced by the Note, Namvar is guilty of oppression, fraud and malice.  SB is therefore entitled to an award of exemplary and punitive damages against Namvar.

21.    As set forth above, Namvar obtained money through the use of false pretenses, false representations and actual fraud.  Pursuant to 11 U.S.C.

THE GERSH LAW FIRM, INC.

**COMPLAINT TO EXCEPT DEBT FROM DISCHARGE**

§523(a)(2)(A), Namvar's debt to SB in the sum of $1,290,000 plus interest is not dischargeable in this bankruptcy proceeding.

## SECOND CLAIM FOR RELIEF

### (Non-Dischargeability of Debt Due SB)
### 11 U.S.C. §523(a)(6)

22.    Plaintiff realleges and incorporates herein by this reference each and every allegation contained in Paragraphs 1 through 21, inclusive as though fully set forth herein.

23.    As alleged above, Namvar has incurred debt to SB for willful and malicious injury by him to SB and its property.  Accordingly, the debt is not dischargeable in this bankruptcy proceeding pursuant to 11 U.S.C.§523(a)(6).

WHEREFORE, Plaintiff Shaw Blackstone, LLC prays for judgment against Namvar as follows:

## ON THE FIRST CLAIM OF RELIEF

1.    The principal sum of $1,290,000;

2.    For accrued interest of $19,618.75 plus accruing interest at the rate of 7 ¾% or $8,331.25 per month until paid in full;

3.    For punitive and exemplary damages sufficient to deter further action of this type; and

4.    For reasonable attorneys fees incurred herein.


## ON THE SECOND CLAIM FOR RELIEF

5.    The principal sum of $1,290,000;

6.    For accrued interest of $19,618.75 plus accruing interest at the rate of 7 ¾% or $8,331.25 per month until paid in full;

7.    For punitive and exemplary damages sufficient to deter further action of this type; and

8.    For reasonable attorneys fees incurred herein.

THE GERSH LAW FIRM, INC.

**COMPLAINT TO EXCEPT DEBT FROM DISCHARGE**

1 **ON ALL CLAIMS FOR RELIEF**

2     9.    For Court costs according to proof at trial;

3     10.    For such other and further relief as the Court deems just and proper.

4

5 DATED:  August 10, 2009        THE GERSH LAW FIRM, INC.

6

7                     By: _____

8                         Jeffrey F. Gersh
                        Rochelle A. Herzog

9                         Attorneys for Creditor  SHAW
BLACKSTONE, LLC,  a California

10                         Limited Liability Company

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE GERSH LAW FIRM, INC.

**COMPLAINT TO EXCEPT DEBT FROM DISCHARGE**

## PROMISSORY NOTE

Los Angeles, California

**$1,290,000.00**

Dated: October 7, 2008

For value received, the undersigned (sometimes referred to herein as "NAMCO") promises to pay, without notice, demand, grace, deduction or offset, to **Shaw Blackstone LLC,** a California limited liability company "Holder"), in lawful money of the United States, in immediately available funds, the principal sum of One Million Two Ninety Thousand and 00/100 Dollars (**$1,290,000.00**), together with interest thereon on October 7, 2009 (the "Maturity Date"),at 8900 W. Olympic Blvd., Beverly Hills, CA 90211 or such other place as the Holder hereof may designate. The Maturity Date shall be subject to extension as set forth below.

The outstanding principal amount of this Note shall bear interest at the rate of **Seven and Three quarters Percent (7.75%)** per annum calculated on a 360/360 basis; that is by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the number of days the principal balance is outstanding (based on 30 days a month). Interest only on the unpaid principal amount outstanding under this Note from time to time shall be payable, in arrears, on the first day of each calendar month beginning November 1, 2008 without notice, grace, demand, deduction or offset, until and including the Maturity Date, on which date, the principal amount hereof, together with all accrued and unpaid interest payable by the undersigned hereunder, shall be due and payable.

Notwithstanding any other provision of this Note, either party may notify the other for the pay off in writing at least 30 days before the undersigned shall become obligated to repay the principal sum of this Note. This provision applies to the Maturity Date as well.

In the event of any misrepresentation, breach of warranty, or other failure by the undersigned, or any party, to perform its obligations under this Note, all unpaid principal and interest under this Note shall, at Holder's sole discretion, be immediately due and payable, without demand, notice or presentment.

No amendment, modification, or waiver of any provision of this Note, nor consent to any departure by the undersigned therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by the Holder, and then such waiver of consent shall be effective only in the specific instance and for the specific purpose for which given.

The options, powers and rights of the Holder specified herein are in addition to, and not in lieu of, those authorized by applicable law.

Notwithstanding anything set forth in this Note, no interest payment or interest rate charged hereunder shall exceed the maximum amount or rate permitted under applicable law.

The undersigned agrees to pay all costs and expenses incurred or payable by Holder in connection with any litigation brought for the enforcement or collection of this Note, including court costs and attorneys' fees and costs actually incurred.

**EXHIBIT __I__**

To the extent permitted by applicable law, the undersigned waives notice of protest, presentment, demand and any other notice in connection with the collection of this Note.

This Note shall be prepayable upon no less than thirty (30) days written notice to Holder.

This Note shall be binding on the undersigned, its successors and assigns and shall inure to the benefit of Holder, its successors and assigns.

Any payment hereunder which is required to be made on a day which is not a business day in the City of Los Angeles shall be payable on the next immediately succeeding business day and such additional time shall be included in the computation of interest.

This Note shall be governed by, and construed in accordance with, the laws of the State of California, and subject to such laws, shall be construed in accordance with the Heter Iskoh policies observed by the undersigned.

This Note replaces and supersedes all prior instruments, documents and agreements which evidence the indebtedness represented by this Note, all of which prior instruments, documents and agreements, shall be null and void and of no force or effect.

**Namco Capital Group, Inc.**

**Ezri Namvar-President**

### Rochelle Herzog

**To:**     Marc Tavakoli
**Subject:** RE: Shaw Blackstone v. Ezri Namvar

I will file the complaint first thing tomorrow.

**Rochelle A. Herzog**
**Senior Counsel**
**THE GERSH LAW FIRM**
15821 Ventura Boulevard, Suite 515
Encino, California 91436
(818) 536-5700 (office)
(818) 536-5711 (direct)
(818) 981-4618 (fax)
**rherzog@gershlegal.com**

This email communication and the attachments hereto, if any, are intended solely for the information and use of the addressee(s) identified above and may contain information which is legally privileged and/or otherwise confidential. Accordingly, if a recipient of this email communication is not an addressee (or an authorized representative of an addressee), such recipient is hereby advised that any review, disclosure, reproduction, re-transmission or other dissemination or use of this email communication (or any information contained herein) is strictly prohibited. If you are not an addressee and/or have received this email communication in error, please advise the sender of that circumstance either by reply email or by telephone at (818) 536-5700, immediately delete this email communication from any computer and destroy all physical copies of same.

Any incoming email reply to this communication will be electronically filtered for "spam" and/or "viruses." That filtering process may result in such reply being quarantined (i.e., potentially not received at our site at all) and/or delayed in reaching us. For that reason, we may not receive your reply and/or we may not receive it in a timely manner. Accordingly, you should consider sending communications to us which are particularly important or time-sensitive by means other than email.

**From:** Marc Tavakoli [mailto:marc@mdtpropertiesllc.com]
**Sent:** Monday, August 10, 2009 3:13 PM
**To:** Rochelle Herzog
**Subject:** RE: Shaw Blackstone v. Ezri Namvar

Rochelle –

I am not going to be able to get you a check for the filing fee before tomorrow, but I will put a check in the mail to you today.  Please file the complaint by tomorrow.

Please hold off on serving the TFT complaint for a couple more days.

Thank you.

## Marc Tavakoli

## mdt enterprises llc
Real Estate Investment
Development & Management

8/10/2009

8900 W. Olympic Blvd.
Beverly Hills, CA 90211
Tel: (310) 285-6062
Fax: (310) 285-9508
marc@mdtpropertiesllc.com

This e-mail message is confidential, intended only for the named recipient(s) above
and may contain information that is privileged, attorney work product or exempt
from disclosure under applicable law.  If you have received this message in error, or
are not the named recipient(s), please immediately notify the sender at (310) 285-
9515 and delete this e-mail message from your computer.  Thank you.

**From:** Rochelle Herzog [mailto:rherzog@gershlegal.com]
**Sent:** Monday, August 10, 2009 2:43 PM
**To:** Marc Tavakoli
**Subject:** Shaw Blackstone v. Ezri Namvar
**Importance:** High

Marc,

So far there has been no extension of the date to file non-dischargeability complaints. The deadline is tomorrow. SB's complaint is ready to be filed. We must file to avoid being barred from bringing the action.  The filing fee is $250.  Please get me a check for the filing fee this afternoon so I can file timely.

On another note, do you want me to have the Tavakoli Family Trust complaint served? You said you would let me know today.  Thanks.

**Rochelle A. Herzog**
**Senior Counsel**
**THE GERSH LAW FIRM**
15821 Ventura Boulevard, Suite 515
Encino, California 91436
(818) 536-5700 (office)
(818) 536-5711 (direct)
(818) 981-4618 (fax)
**rherzog@gershlegal.com**

This email communication and the attachments hereto, if any, are intended solely for the information and use of the addressee(s)
identified above and may contain information which is legally privileged and/or otherwise confidential. Accordingly, if a recipient
of this email communication is not an addressee (or an authorized representative of an addressee), such recipient is hereby
advised that any review, disclosure, reproduction, re-transmission or other dissemination or use of this email communication (or
any information contained herein) is strictly prohibited. If you are not an addressee and/or have received this email
communication in error, please advise the sender of that circumstance either by reply email or by telephone at (818) 536-5700,
immediately delete this email communication from any computer and destroy all physical copies of same.

Any incoming email reply to this communication will be electronically filtered for "spam" and/or "viruses." That filtering process
may result in such reply being quarantined (i.e., potentially not received at our site at all) and/or delayed in reaching us. For that
reason, we may not receive your reply and/or we may not receive it in a timely manner. Accordingly, you should consider sending
communications to us which are particularly important or time-sensitive by means other than email.

## Rochelle Herzog

**From:**    Marc Tavakoli [marc@mdtpropertiesllc.com]
**Sent:**    Monday, August 10, 2009 3:13 PM
**To:**    Rochelle Herzog
**Subject:** RE: Shaw Blackstone v. Ezri Namvar

Rochelle –

I am not going to be able to get you a check for the filing fee before tomorrow, but I will put a check in the mail to you today.  Please file the complaint by tomorrow.

Please hold off on serving the TFT complaint for a couple more days.

Thank you.

## Marc Tavakoli

## mdt enterprises llc
Real Estate Investment
Development & Management

8900 W. Olympic Blvd.
Beverly Hills, CA 90211
Tel:  (310) 285-6062
Fax: (310) 285-9508
marc@mdtpropertiesllc.com

This e-mail message is confidential, intended only for the named recipient(s) above
and may contain information that is privileged, attorney work product or exempt
from disclosure under applicable law.  If you have received this message in error, or
are not the named recipient(s), please immediately notify the sender at (310) 285-
9515 and delete this e-mail message from your computer.  Thank you.

**From:** Rochelle Herzog [mailto:rherzog@gershlegal.com]
**Sent:** Monday, August 10, 2009 2:43 PM
**To:** Marc Tavakoli
**Subject:** Shaw Blackstone v. Ezri Namvar
**Importance:** High

Marc,

So far there has been no extension of the date to file non-dischargeability complaints. The deadline is tomorrow. SB's complaint is ready to be filed. We must file to avoid being barred from bringing the action.  The filing fee is $250.  Please get me a check for the filing fee this afternoon so I can file timely.

On another note, do you want me to have the Tavakoli Family Trust complaint served? You said you would let me know today. Thanks.

**Rochelle A. Herzog**
**Senior Counsel**
**THE GERSH LAW FIRM**

15821 Ventura Boulevard, Suite 515
Encino, California 91436
(818) 536-5700 (office)
(818) 536-5711 (direct)
(818) 981-4618 (fax)
**rherzog@gershlegal.com**

This email communication and the attachments hereto, if any, are intended solely for the information and use of the addressee(s) identified above and may contain information which is legally privileged and/or otherwise confidential. Accordingly, if a recipient of this email communication is not an addressee (or an authorized representative of an addressee), such recipient is hereby advised that any review, disclosure, reproduction, re-transmission or other dissemination or use of this email communication (or any information contained herein) is strictly prohibited. If you are not an addressee and/or have received this email communication in error, please advise the sender of that circumstance either by reply email or by telephone at (818) 536-5700, immediately delete this email communication from any computer and destroy all physical copies of same.

Any incoming email reply to this communication will be electronically filtered for "spam" and/or "viruses." That filtering process may result in such reply being quarantined (i.e., potentially not received at our site at all) and/or delayed in reaching us. For that reason, we may not receive your reply and/or we may not receive it in a timely manner. Accordingly, you should consider sending communications to us which are particularly important or time-sensitive by means other than email.

8/10/2009

## GUARANTEE AGREEMENT

THIS GUARANTEE AGREEMENT (this "Guarantee"). dated as of October 7, 2008 is executed by  Ezri Namvar   ("Guarantor") for the benefit of Shaw Blackstone LLC, a California limited liability company ("Lender"). with reference to the following facts:

A.  Concurrently herewith. Lender is agreeing to extend a loan or credit accommodation to NAMCO Capital Group, Inc. ("Borrower"); in the principal amount of One Million Two Hundred Ninety Thousand and 00/100 Dollar ($1,290.0000.00) (the "Loan")

B.  Guarantor desires that Lender extend the Loan to Borrower, and the Loan is in the best interests and will benefit Guarantor.

C.  In order to induce Lender to extend said loan or credit accommodation to Borrower, Guarantor has offered to execute this Guarantee to the extent of full value of the Note  in favor of Lender.  Lender would not extend such loan or credit accommodation to Borrower without this Guarantee

D.  Borrower is, concurrently herewith, executing the following instruments. agreements or documents in favor of Lender:

1-Promissory Note in the amount of $1,290,000.00

E.  The documents referred to in Paragraph D above, as well as any other instruments, agreements. documents, indemnities and/or guarantees evidencing, securing or guaranteeing the Loan are collectively referred to herein as the "Loan Documents"

NOW, THEREFORE  in consideration of the foregoing recitals and for other good and valuable consideration  the receipt and adequacy of which is hereby acknowledged by Guarantor. Guarantor hereby agrees and covenants in favor of Lender as follows

1        Guarantee.  The Guarantor hereby absolutely, irrevocably and unconditionally guarantees the due and punctual payment and performance of all Obligations (as hereinafter defined) of the Borrower to Lender when and as the same shall become due and payable (whether on demand, at stated maturity upon acceleration or otherwise, and regardless of any right of reinstatement Borrower may have).

The Guarantor hereby agrees that this Guarantee is a continuing guarantee of payment and not of collection  that it is a primary, independent obligation of the Guarantor  and that the Guarantor's obligations hereunder shall be absolute  unconditional and irrevocable, irrespective of any invalidity illegality or unenforceability of, or defeat in  or any change in  or amendment  modification or waiver of any term or condition of any credit, financial accommodation  loan  note  agreement or other document or instrument evidencing  securing or guaranteeing any of the Borrower's Obligations, any settlement or compromise thereof  the absence of any action to enforce the same, any waiver or consent by the Lender with respect to any provision thereof, or the recovery of any judgment against the Borrower or any other person, or any action to enforce the same  or the recovery of any claim under any applicable insurance. or any other action or circumstance which might otherwise constitute a legal or equitable discharge or defense of a surety or Guarantor.  The Guarantor hereby waives notice of acceptance of this Guarantee. the extension of any credit or financial accommodation, the making of any loan or the incurrence of any other obligation and, with respect to any Obligation and/or any promissory note, or other instrument or document evidencing any Obligation of the Borrower, appraisal, valuation, marshalling of assets diligence  presentment  demand of payment  filing of claim first against the Borrower, any other guarantor any other person  or any collateral security for any of the Obligations, protest, notice of default, dishonor or non-payment and any other notice and all demands whatsoever  The Guarantor covenants that this Guarantee  and the obligations of Guarantor under this Guarantee, will not be discharged except by

EXHIBIT 2

complete and final payment and performance of all Obligations of the Borrower, and of the Guarantor arising out of this Guarantee. In the event any payment made by the Guarantor hereunder is thereafter required to be rescinded or otherwise restored or paid over to the Guarantor or any other person (whether upon the insolvency or bankruptcy of the Borrower or the Guarantor, or otherwise), the Guarantor's obligations hereunder shall be immediately and automatically reinstated as though such payment had not been made.

As used herein, the term "Obligations" shall mean any and all indebtedness, obligations and liabilities of the Borrower to the Lender arising with respect to the Loan and/or evidenced or secured by the Loan Documents or by any other agreement, document or instrument, including, without limitation, principal, interest, fees or charges.

2    Representations, Warranties and Agreements.  The Guarantor represents and warrants that (a) Guarantor has the full right, power and authority to enter into this Guarantee and to perform its obligations under the terms of this Guarantee; (b) this Guarantee is the legal, valid and binding obligation of the Guarantor, enforceable in accordance with its terms; (c) neither the execution and delivery of this Guarantee, nor the consummation of the transactions herein contemplated, nor compliance with the terms and provisions hereof, will contravene any law or regulation to which the Guarantor is subject or will conflict or will be inconsistent with, or will result in any breach of, any of the terms, covenants or provisions of, or constitute a default under, or result in the creation or imposition of any mortgage, pledge, lien, charge, encumbrance or security interest upon any of the property or assets of the Guarantor pursuant to the terms of any indenture, mortgage, deed of trust, agreement or other instrument to which the Guarantor is a party or by which the Guarantor may be bound; (d) no order, consent, license, authorization or approval of, or exemption by, or the giving of notice to, or registration with, any governmental agency or public authority is required in connection with the execution, delivery or performance of this Guarantee; (e) the Guarantor has not granted, created or permitted to exist any mortgage, pledge, lien, charge, encumbrance or other security interest on any property, assets, revenues or earnings of the Guarantor except those previously disclosed in writing to the Lender; (f) on and as of the date hereof there exists no Event of Default (as hereinafter defined) or event which, with the giving of notice or passage of time, or both, would become an Event of Default; (g) all financial statements which have heretofore been furnished by Guarantor to Lender in connection with this Guarantee, and all financial statements which may hereafter be furnished by Guarantor to Lender, have been, and shall be prepared in accordance with generally accepted accounting principles consistently applied, except as disclosed therein, and all such financial statements are and shall be true, correct and complete, as of the respective dates thereof, and Guarantor certifies that there has been no material adverse change in the financial condition of Guarantor from that represented to Lender in connection with this Guarantee; and (h) there is no private or governmental action, suit, proceeding or investigation pending, or threatened, against or affecting Guarantor, at law, in equity, or otherwise, which is likely to result in any material adverse change in the assets or the financial condition of Guarantor, or materially impair its ability to perform its obligations under this Guarantee.

Additionally, Guarantor hereby guarantees the truth, accuracy and completeness of any and all warranties and representations of Borrower contained in the Loan Documents, or otherwise given to Lender.

3    Covenants.  In addition to Guarantor's other covenants and agreements in this Guarantee, Guarantor hereby covenants and agrees that so long as any Obligations of the Borrower or of the Guarantor hereunder remain outstanding, Guarantor (a) will not sell, transfer, convey, pledge, hypothecate, encumber, or otherwise dispose of all or a substantial part of its assets (whether in one or a series of transactions), voluntarily, involuntarily, by operation of law or otherwise, and (b) will give prompt written notice to the Lender of the occurrence of any Event of Default.

Initials:

4        Waiver.  Guarantor hereby unconditionally and absolutely waives, and agrees not to assert, plead, or in any manner whatsoever claim or take advantage of, any and all defenses or rights which it may have now or in the future under any statute, or at law or equity, or otherwise, (a) to require Lender to proceed against, or enforce or exhaust its rights, remedies or recourse against, Borrower or any other guarantor, surety or other party, or any security or collateral held by Lender at any time, or to pursue any other remedy in its power before being entitled to payment and performance by Guarantor of the Obligations or before proceeding against Guarantor, (b) with respect to the defense of the statute of limitations in any action hereunder or for the collection of the Obligations; (c) with respect to any right of subrogation against Borrower, but only until all of the Obligations have been discharged in full; (d) with respect to any defense that may arise by reason of (1) the incapacity, lack of authority, dissolution, death or disability of Borrower or any other guarantor, (2) the revocation or repudiation of this Guarantee by Guarantor or the revocation or repudiation of any Loan Documents by Borrower or any other person or persons, (3) the failure of Lender to file or enforce a claim against Borrower or the estate (either in administration, bankruptcy or any other proceeding) of Borrower or any other guarantor or surety or any other party, (4) the unenforceability in whole or in part of any Loan Documents or any other instrument document or agreement referred to in this Guarantee, or any provision thereof, (5) Lender's election, in any proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code, or (6) any borrowing or grant of a security interest under Section 364 of the Bankruptcy Code; (e) with respect to presentment, demand for payment, protest, notice of discharge, notice of acceptance of this Guarantee, and indulgences and notices of any other kind whatsoever; (f) with respect to any defense based upon an election of remedies (including, if available, an election to proceed by non-judicial foreclosure) by Lender, by reason of the operation of California Code of Civil Procedure Section 580d or otherwise, which destroys or otherwise impairs the subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement, or both; (g) with respect to any rights or defenses created by the anti-deficiency or one action statutes of the State of California; (h) with respect to any defense based upon any taking, modification or release of any collateral or guarantees for any indebtedness of Borrower to Lender, or any failure to perfect any security interest in, or the taking of, or failure to take, any other action with respect to any collateral securing payment or performance of the Obligations; (i) to require Lender to advise Guarantor of any information known to Lender regarding the financial condition of Borrower; or (j) with respect to any rights or defenses based upon an offset by Guarantor against any obligation now or hereafter owed to Guarantor by Borrower, it being the intention of this Guarantee that Guarantor shall remain liable with respect to all Obligations, to the extent set forth in this Guarantee, until the full payment and performance of all of the Obligations notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of Guarantor.  Without limiting the generality of the foregoing or any other provisions of this Guarantee, Guarantor hereby expressly waives any and all benefits or defenses which might otherwise be available to it under California Civil Code Sections 2809, 2810, 2819, 2821, 2839, 2845, 2847, 2848, 2849, 2850, 2854, 2899 and 3433 and California Code of Civil Procedure Sections 337, 580a, 580b, 580d and 726.  It is agreed between Guarantor and Lender that the foregoing waivers are of the essence of the loan transaction between Lender and Borrower, and that, but for this Guarantee and such waivers, Lender would decline to extend the Loan to Borrower.

5        Subordination and Subrogation.        The Guarantor hereby subordinates all present and future claims, now held or hereafter acquired, against the Borrower as a creditor or contributor of capital or otherwise, to the prior and final performance and payment in full to the Lender of all Obligations of the Borrower; and if any payment shall be made to Guarantor on any such claims against Borrower prior to the final and complete payment and performance to Lender of all of the Obligations, the Guarantor shall hold such amounts in trust for the benefit of Lender, and each and every amount so paid shall forthwith be paid to Lender to be credited and applied upon the Obligations, whether or not the Obligations have matured.

a.    If, pursuant to applicable law, Guarantor, by payment, or otherwise, becomes subrogated to any or all of the rights of Lender in connection with any of the Obligations, or any of the instruments or documents underlying or securing the Obligations, the rights of Lender to which Guarantor shall be subrogated shall be accepted by Guarantor "as is" and without any representation or warranty of any kind by Lender, express or implied, with respect to the legality, value, validity or enforceability of any of such rights, or the existence, availability, value, merchantability or fitness for any particular purpose of any collateral pledged, conveyed, or otherwise securing the Obligations, or otherwise whatsoever.

b.    The obligations of Guarantor under this Guarantee are independent of the obligations of Borrower, or of any other guarantor or surety, and if Lender may, under any applicable law, proceed to realize any rights, remedies or benefits which it may have in connection with the Obligations, or any of the underlying documents giving Lender a lien upon, or a security interest in, any collateral, whether owned by Borrower or by any other person, whether by judicial foreclosure, non-judicial sale or enforcement, or otherwise. Lender may, at its sole option, determine which of its remedies or rights to pursue, without affecting any of its rights and remedies under this Guarantee. If in the exercise of any of its rights or remedies in connection with the Obligations Lender shall be deemed to have waived or forfeited any of its rights or remedies, including its right to obtain a deficiency judgment against Borrower or any other person, whether because of any applicable law pertaining to an election of remedies, or otherwise. Guarantor hereby consents and agrees that Lender may bring any action which it deems appropriate, and Guarantor hereby waives any claim or defense which it might otherwise have in connection with such action, even if such action by Lender shall result in a full or partial loss of any rights of subrogation which Guarantor might otherwise have had but for such action by Lender. Any election of remedies which results in the denial or impairment of Lender's right to seek a deficiency judgment against Borrower shall not impair Guarantor's obligation to pay such deficiency. In the event Lender chooses to bid at any foreclosure or trustee's sale, or at any private sale permitted by law or by the documents executed in connection with the Obligations. Lender may bid all or less than the amount of the indebtedness owing by Borrower to Lender, and the amount of such bid need not be paid by Lender but may, at Lender's option, be credited against the Obligations. The amount of the successful bid at any such sale, whether Lender or any other party is the successful bidder, shall be conclusively deemed to be the fair market value of the collateral, and the difference between such bid amount and the remaining balance of the Obligations shall be conclusively deemed to be the amount of the Obligations under this Guarantee, notwithstanding that any present or future law or ruling may otherwise have the effect of reducing the amount of any deficiency claim to which Lender might otherwise be entitled but for such bidding at any such sale.

d.    Without limiting the foregoing in any way, Guarantor acknowledges (i) that if the Lender elects to nonjudicially foreclose against any security or collateral held by Lender, Guarantor's subrogation rights against Borrower will be destroyed because California Code of Civil Procedure Section 580d precludes anyone (including a guarantor) from obtaining a deficiency judgment against Borrower after a nonjudicial foreclosure sale, (ii) that the destruction of Guarantor's subrogation rights against Borrower creates a defense for a deficiency judgment against Guarantor based upon California of Civil Procedure Section 580d; and (iii) that Guarantor waives any defense it may have to a deficiency judgment based upon the loss of Guarantor's subrogation rights against Borrower resulting from Lender's election to nonjudicially foreclose against said security or collateral.

e.    Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the Code of Civil Procedure or otherwise.

6.    Events of Default. If at any time

a.    (i) any Obligations of the Borrower are not paid and/or performed when due; or

(ii)  any monetary obligation of either the Borrower or the Guarantor (or any other guarantor of the Obligations, referred to herein as the "other guarantor") to any person is not paid when due and the Lender in its sole discretion deems such non-payment to be material; or

b.      the Borrower or the Guarantor, or such other guarantor, shall (i) fail to perform, or breach, any agreement, covenant or undertaking under any agreement (including, without limitation, this Guarantee, or any of the Loan Documents) executed with, or for the benefit of, the Lender, (ii) make or have made any misrepresentation or misleading omission, or breach any warranty in any financial statement, agreement (including, without limitation, this Guarantee and the Loan Documents) or other document delivered to the Lender by or on behalf of the Borrower or the Guarantor, or such other guarantor, (iii) fail to furnish financial information or to permit inspection of their respective books or records on demand, or (iv) otherwise fail to disclose any material fact regarding their respective financial or business conditions; or

c.      any event shall occur under any instrument or agreement relating to any indebtedness of the Borrower or the Guarantor which would cause, or would permit the holder of such indebtedness, or a trustee on its behalf, to cause such indebtedness to become due prior to its stated maturity; or

d.      the Borrower or the Guarantor, or such other guarantor, shall suspend or have suspended the transaction of either of their businesses or any substantial part thereof, liquidate their businesses or take any step in furtherance of liquidation, or make or give notice of a bulk sale, make an assignment for the benefit of creditors, or a composition with creditors or have appointed a creditors' committee, be unable to pay or admit in writing the inability to pay, or generally fail to pay, the Borrower's or the Guarantor's (or any other guarantor's) debts, as the case may be, as they become due, be or become insolvent (howsoever evidenced); or a trustee, receiver, liquidator, intervenor or the like shall be appointed for the Borrower or the Guarantor (or any other guarantor) or for all or any substantial part of the property or assets of either of them; or the Borrower or the Guarantor (or any other guarantor) shall commence or have commenced against either of them any proceeding under any insolvency, bankruptcy, reorganization, arrangement, readjustment of debt, relief of debtors, receivership, dissolution, liquidation or similar law of any jurisdiction, or any other proceeding for the relief of financially distressed debtors, or the Borrower or the Guarantor (or any other guarantor) shall be adjudicated bankrupt or insolvent, or the Borrower or the Guarantor (or any other guarantor) shall take any action in furtherance of the foregoing; or

e.      the financial responsibility of the Borrower or the Guarantor (or any other guarantor) shall, in the sole opinion of the Lender, become impaired or unsatisfactory, or there shall have occurred any material adverse change as determined by the Lender in its sole discretion, in the financial condition of the Borrower or the Guarantor (or any other guarantor); or

f.      any judgment against the Borrower or the Guarantor (or any other guarantor) shall be entered, which for a period of thirty (30) days shall neither be paid nor stayed pending appeal; or

g.      any warrant, order of attachment, tax lien, distraint, garnishment or other levy shall be issued against the Borrower or the Guarantor (or any other guarantor) or any of their properties, or any receiver, court or any governmental authority, agency, instrumentality or officer thereof shall take possession or control of, seize, condemn, intervene or otherwise appropriate any substantial part of the Borrower's or the Guarantor's (or any other guarantor's) property or control the affairs and obligations of the Borrower or the Guarantor (or any other guarantor); or

h.      any approvals, consents, or registrations required to be obtained by the Borrower or the Guarantor (or any other guarantor) shall not be obtained timely or shall thereafter be revoked, rescinded, suspended or otherwise limited, in whole or in part, or

i.      any event such as riot, insurrection or the like, shall occur, or any other event shall occur, and in the sole opinion of the Lender, the ability of either the Borrower or the Guarantor (or any other guarantor) to perform their respective obligations to the Lender shall have become impaired,
then, in any such event, the Lender shall have the right to declare an amount equal to the entire amount of the Borrower's Obligations (whether or not same shall then be due and regardless of any right of reinstatement which Borrower may have) to be due and payable under this Guarantee, whereupon same shall become immediately due and payable by the Guarantor.

7.      Modification of Obligation.  At any time and from time to time, without the consent of, or notice to, Guarantor, without incurring any liability to Guarantor and without impairing or releasing the obligations of Guarantor under this Guarantee, Lender may, in addition to Lender's other rights under this Guarantee:

a.      Change or extend the manner, place or terms of payment of, or alter all or any portion of, the Obligations;

b.      Take any action under or with respect to the Obligations in the exercise of any remedy, power or privilege available to Lender in connection therewith, at law, equity, or otherwise, or waive or refrain from exercising any such remedies, powers or privileges;

c.      Amend, modify, supplement, terminate, cancel, supersede, replace or change in any respect any of the Loan Documents, or any other documents, agreements or instruments executed in connection with, or any other guarantee of, the Obligations;

d.      Extend or waive the time for Borrower's, or any other guarantor's, person's or party's performance of, or compliance with, any term, covenant or agreement to be performed in connection with the Obligations or any documents relating thereto, or waive such performance or compliance or consent to a failure of such performance or compliance;

e.      Sell, exchange, release, dispose of, subordinate or otherwise deal with any real or personal property pledged, mortgaged or conveyed, or in which Lender has been granted a security interest, to secure any indebtedness of Borrower to Lender;

f.      Release any other guarantor or surety, or anyone else who may be liable in any manner for the payment and collection of any amounts owed by Borrower to Lender;

g.      Make other or additional loans to Borrower upon such terms, in such amounts, and at such times as Lender may deem appropriate in its sole and absolute discretion; and

h.      Apply any sums by whomever paid or however realized to any amounts owing by Borrower to Lender in such manner as  Lender shall determine in its sole and absolute discretion.

8.      Fees and Expenses.  The Guarantor hereby agrees to pay all fees and expenses (including, without limitation, attorneys' fees and costs actually incurred) and out-of-pocket expenses of the Lender in connection with the enforcement or preservation of any of the Lender's rights hereunder.

9.      Notices; Payments.  Except as otherwise specified herein, all notices, demand or other communications pursuant hereto shall be deemed to have been duly given or made upon the earlier of (i) expiration of seventy two (72) hours after deposit in the United States mail, registered or certified,



postage prepaid, return receipt requested or (ii) upon receipt by the addressee as indicated in the return receipt, to the following addresses:

If to Guarantor: Ezri Namvar
12121 Wilshire Blvd. #1400,
Los Angeles, CA 90025
Tel. # (310) 207-1000
Fax # (310) 207-6300

If to Lender:   Shaw Blackstone, LLC
8900 W. Olympic Blvd.
Beverly Hills, CA 90211
Tel. # (310) 285-6062
Fax # (310) 285-9508

Any payments made hereunder shall be payable at the office of the Lender referred to herein, or such other office as the Lender may elect, and shall be made in United States dollars and in immediately available funds, free and clear of and without set-off, counterclaim, withholding for any taxes or other charges or other deduction whatsoever.

10.     No Waiver, Remedies Cumulative.  No failure or delay on the part of the Lender in exercising any right, power or privilege hereunder and no course of dealing between the Guarantor and the Lender or the Borrower and the Lender shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which the Lender would otherwise have, including, without limitation, any and all rights or remedies of Lender against any other guarantor, or surety or other party or under the Loan Documents, at law or equity.  No notice to or demand on the Guarantor in any case shall entitle any other or further notice or demand in similar or other circumstances or constitute a waiver of its rights of the Lender to any other or further action in any circumstances without notice or demand.

11.     Assignment by Lender.  Lender may freely assign this Guarantee.

12.     Benefit of Guarantee.  This Guarantee shall be binding upon and inure to the benefit of the successors and assigns of the Lender and the heirs and assigns of the Guarantor; provided, however, that Guarantor may not assign any of his obligations hereunder without the prior written consent of the Lender.  Nothing contained in this Guarantee shall impair or affect any of the Obligations of Borrower.

13.     Governing Law.  This Guarantee shall be construed in accordance with and be governed by the laws of the State of California.

14.     Entire Agreement, Amendments.  This Guarantee contains the entire agreement between the parties with respect to the subject matter hereof, and supersedes any and all prior agreements and understandings relating to such subject matter, and this Guarantee cannot be amended or supplemented except by a written agreement signed by Guarantor and Lender.

15.     Severability.  In the event that any one or more of the provisions contained in this Guarantee shall be determined to be invalid, illegal or unenforceable in any respect, for any reason, the validity, legality and enforceability of any such provision or provisions in every other respect, and of the remaining provisions of this Guarantee, shall not be in any way impaired.

## ASSIGNMENT AND SECURITY AGREEMENT

**THIS ASSIGNMENT AND SECURITY AGREEMENT** (this "*Agreement*"), dated as of September 26, 2008, is made by Ezri Namvar ("*Assignor*"), in favor of Fresno Shaw Blackstone LLC, a California limited liability company ("*Lender*"), with reference to the following:

A.    Lender has made certain loans to Namco Capital Group, Inc., a California corporation ("*Borrower*"), which loan is evidenced by certain promissory notes listed on Exhibit A attached hereto (the "*Note*"), made by Borrower in favor of Lender (the "*Loan*").

B.    Assignor owns 64% of the membership interests in Namari LLC, a California limited liability company (the "*Pledged Company*"). The Pledged Company is the indirect owner of the property known as the Los Angeles Downtown Marriott Hotel as more fully described in Exhibit B (the "*Property*").

C.    Assignor has materially benefited from the Loans made by Lender to Borrower.

D.    As security for the obligations of Borrower under the Loan, Lender is requiring that Assignor execute and deliver this Agreement.

**NOW, THEREFORE**, in consideration of the premises, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, Assignor hereby agrees as follows:

1.    Collateral Assignment. As security for performance of its obligations under the Loan, the performance of all other obligations of the Borrower and Assignor, now existing or hereafter incurred under, arising out of or in connection with the Loan (all such obligations being herein collectively called the "*Obligations*"), Assignor hereby assigns, transfers, pledges and grants from its interest in the Pledged Company, as collateral security, a security interest in five (5%) percent of the Pledged Company, including, without limitation: (i) all payments of whatever nature to become due to Assignor in respect of such five percent interest in and under the operating agreement of the Pledged Company (the "*Governing Documents*"), (ii) Assignor's respective claims, rights, powers, privileges, security interests, liens and remedies under the Governing Documents, (iii) Assignor's respective rights under the Governing Documents to make determinations, to exercise any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval together with full power and authority to demand, receive, enforce, collect or receipt for any of the foregoing or any property of the Pledged Company, to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action which in the opinion of the Lender may be necessary or advisable in connection with any of the foregoing, *provided* that prior to the date upon which an event of default has occurred under the Note and any applicable notice and cure periods have expired (the "*Specified Date*"), Assignor shall, subject to the provisions of the following sentence, be entitled to exercise all of the rights assigned pursuant to this Paragraph 1. Assignor expressly acknowledges that if any default is outstanding hereunder or with respect to the Obligations, he shall not be entitled to receive any distributions from the Pledged Company in connection with the five percent membership interest until such time as the Obligations have been paid and performed in full, and any amounts received by Assignor in violation of this provision will be held in trust by Assignor for the benefit of Lender. All the rights assigned pursuant to this Paragraph 1 are hereinafter referred to as the "*Collateral*". From and after the Specified Date, all of Assignor's respective right, title and interest in and to the Collateral shall cease to exist and Assignor

EXHIBIT   3

shall have no further right to act in any respect as members in the Pledged Company. This Agreement constitutes a security agreement under the Uniform Commercial Code as enacted and in effect from time to time in California (the "*UCC*").

      2.    Limitation on Obligations of the Lender. Notwithstanding anything herein to the contrary, Assignor shall remain liable under the Governing Documents to observe and perform all of the conditions and obligations to be performed and observed by it thereunder. Prior to the transfer of title to the Lender following a foreclosure hereunder, the Lender shall not have any obligation or liability under the Governing Documents by reason of or arising out of this Agreement, nor shall the Lender be obligated in any manner to perform any of the obligations of any Assignor under or pursuant to the Governing Documents.

      3.    Remedies. Commencing on the Specified Date, the Lender shall be entitled to exercise all of the rights, powers and remedies (whether vested in it by this Agreement or by law) for the protection and enforcement of its rights with respect to the Collateral, and the Lender shall be entitled, without limitation, to exercise the following rights, which Assignor hereby agrees to be commercially reasonable:

      (a)    to give all consents, waivers and ratifications with respect to the Collateral and otherwise act with respect thereto as though it were the outright owner thereof (Assignor hereby irrevocably constituting and appointing the Lender the proxy and attorney-in-fact of Assignor, coupled with an interest, with full power of substitution to do so), including, without limitation, the right to exercise all of the rights and interests granted to the Lender pursuant to Paragraph 1 hereof;

      (b)    at any time or from time to time to sell, assign and deliver or grant options to purchase, all or any part of the Collateral, or any interest therein, at any public or private sale, without demand of performance, judicial hearing, advertisement or notice of intention to sell or of the time or place of sale or adjournment thereof or to redeem or otherwise (all of which are hereby waived, to the extent permitted by law, by Assignor), for cash, on credit or for other property, for immediate or future delivery without any assumption of credit risk, and for such price or prices and on such terms as the Lender in its absolute discretion may determine. Assignor hereby waives and releases to the fullest extent permitted by law any right or equity of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if any, of marshalling the Collateral and any other security for the Obligations or otherwise. At any such sale, unless prohibited by applicable law, the Lender may bid for and purchase all or any part of the Collateral so sold free from any such right or equity of redemption. The Lender shall not be liable for failure to collect or realize upon any or all of the Collateral or for any delay in so doing nor shall the Lender be under any obligation to take any action whatsoever with regard thereto. Assignor specifically acknowledges that the Lender might be unable to effect a public sale of the Collateral and might be required by applicable law to sell the Collateral by one or more private sales to a restricted group of purchasers who will be obligated to agree, among other things, to acquire the Collateral for the purchaser's own investment account with no view to the distribution or resale of the Collateral. Assignor further acknowledges that such private sales might result in the Lender's obtaining prices and terms which are less favorable than those which might have been obtained by public sales and agrees that such private sales will be deemed to have been made in a commercially reasonable manner and that the Lender will have no obligation to delay sale of the Collateral to permit any issuer to register the Collateral for public sale under the Securities Act of 1933; and

      (c)    assume outright ownership of the Collateral and receive the full benefits of ownership.

4.    Remedies Cumulative. Each right, power and remedy of the Lender provided for in this Agreement or any other related loan document now or hereafter existing at law or in equity or by statute shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy. The exercise or beginning of the exercise by the Lender of any one or more of the rights, powers or remedies provided for in this Agreement or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by the Lender of all such other rights, powers or remedies, and no failure or delay on the part of the Lender to exercise any such right, power or remedy shall operate as a waiver thereof.

5.    Application of Proceeds. All moneys collected by the Lender upon any sale or other disposition of the Collateral, together with all other moneys received by the Lender hereunder, shall be applied:

(i) first, to the payment of all costs and expenses incurred by the Lender in connection with such sale, the delivery of the Collateral or the collection of any such moneys (including, without limitation, reasonable attorneys' fees and disbursements);

(ii) next, any surplus then remaining to the payment of any and all expenses and fees (including reasonable attorneys' fees and disbursements) incurred by the Lender under the Note;

(iii) next, any surplus then remaining to the payment of so much of the Obligations as constitutes accrued and unpaid interest;

(iv) next, any surplus then remaining to the payment of so much of the Obligations as constitutes unpaid principal; and

(v) finally, to the extent moneys remain after the application pursuant to preceding clauses (i), (ii), (iii) and (iv), to Assignor in accordance with the Governing Documents.

6.    Purchasers of Collateral. Upon any sale of the Collateral by the Lender hereunder (whether by virtue of the power of sale herein granted, pursuant to judicial process or otherwise), the receipt of the Lender or the officer making the sale shall be a sufficient discharge to the purchaser or purchasers of the Collateral so sold, and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid over to the Lender or such officer or be answerable in any way for the misapplication or non-application thereof.

7.    Indemnity. Assignor agrees to indemnify and hold harmless the Lender from and against any and all claims, demands, losses, judgments and liabilities (including liabilities for penalties) of whatsoever kind or nature and to reimburse the Lender for all costs and expenses, including reasonable attorneys' fees and disbursements, growing out of or resulting from this Agreement or the exercise by the Lender of any right or remedy granted to it hereunder (including, without limitation, any claims, losses and expenses related to or arising from liabilities or obligations of the Assignor, as a shareholder in the Pledged Company, existing on the Specified Date), including, without limitation, costs and expenses resulting from the negligence of the Lender but excluding those costs and expenses resulting from the gross negligence or willful misconduct of the Lender. If and to the extent that the obligations of Assignor under this Paragraph 7 are unenforceable for any reason, Assignor hereby agrees to make the maximum contribution to the payment and satisfaction of such obligations that is permissible under applicable law.

8.    Further Assurances. Assignor agrees that, at his own expense, he will execute and deliver, and if requested, he will file under the UCC or any similar statute of any other jurisdiction, such financing statements, continuation statements, assignments and other documents in such offices as the Lender may deem necessary or appropriate and wherever required or permitted by law in order to perfect and preserve the Lender's security interest in the Collateral and hereby authorize the Lender to file financing statements and amendments thereto relative to all or any part of the Collateral without the signature of the Assignor where permitted by law, and agrees to do such further acts and things and to execute and deliver to the Lender such additional conveyances, assignments, agreements and instruments as the Lender may reasonably require or deem advisable to carry into effect the purposes of this Agreement or to further assure and confirm unto the Lender its rights, powers and remedies hereunder.

9.    Transfer by the Assignor; Amendment to Governing Documents.

(a)    Assignor will not sell or otherwise dispose of, grant any option with respect to, or mortgage, pledge or otherwise encumber any of the Collateral or any interest therein (except pursuant to this Agreement). Further, Assignor will not permit the Pledged Company to dispose of, grant any option with respect to, or mortgage, pledge or otherwise encumber any of the Pledged Company's assets or the Property or any interest therein, or otherwise incur any indebtedness (except as otherwise exists as of the date hereof).

(b)    Assignor will not consent to any amendment or modification of the Governing Document of the Pledged Company without the prior written consent of the Lender. Assignor shall give the Lender copies of all amendments and modifications to the Governing Documents promptly following the execution thereof.

(c)    Assignor shall not encumber or consent to encumber the Property, title to which property is 100% vested in LA Hotel Venture, LLC without the prior written consent of Lender. Except for a current indebtedness against the Property, evidence of which is attached hereto as Exhibit C, Assignor shall not act to further encumber the Property with any monetary or non-monetary encumbrances without the prior written consent of Lender. Recordation of any instrument in the chain of title of the Property without Lender's prior written approval, reflecting further encumbrance of the Property by the Assignor shall be a default under the terms of the Notes as well as this Agreement.

(d)    Lender shall have the right to render any actions by Assignor in contradiction of this Section 9 null and void.

10.   Representations, Warranties and Covenants of the Assignor.

(a)    Assignor represents and warrants that:

(i) it is the legal and beneficial owner of, and has good and marketable title to, the Collateral assigned hereunder, subject to no pledge, lien, mortgage, hypothecation, security interest, charge, option or other encumbrance whatsoever, except the liens and security interests created by this Agreement;

(ii) it has full power, authority and legal right to assign all the Collateral assigned hereunder;

(iii) this Agreement has been duly authorized, executed and delivered by it and constitutes a legal, valid and binding obligation of the Assignor enforceable in accordance with its terms;

(iv) except as provided, no consent of any other party (including, without limitation, any lender, stockholder, member, individual, the Pledged Company, corporation, joint venture or creditor of the Assignor) and no consent, license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority is required in connection with the execution, delivery or performance by Assignor of this Agreement;

(v) neither the execution, delivery or performance of this Agreement nor the consummation of the transactions herein contemplated, nor compliance with the terms and provisions hereof will violate any legal requirement applicable to it, or will conflict, or will be inconsistent with, or will result in any breach of any provision of, or constitute a default under, any mortgage, indenture, lease, contract or other agreement, instrument or undertaking to which Assignor is a party or which is binding upon Assignor or upon any of its assets or the Governing Documents and will not result in the creation or imposition of any lien or encumbrance on any of the assets of Assignor except as contemplated by this Agreement;

(vi) there is no action, suit or proceeding pending, or to the best knowledge of Assignor, threatened against or affecting Assignor or the Pledged Company, in any court at law or in equity, or before or by any governmental authority, which might have a material adverse effect on the business or financial condition of Assignor or the Pledged Company. Assignor is not in default with respect to or under any legal requirement applicable to it;

(vii) the Governing Documents have been duly executed and delivered by Assignor, are unmodified, and are in full force and effect and constitute the legal, valid and binding obligations of Assignor and, to the best knowledge of Assignor, of each other party thereto. Assignor has received no notice of default, and to the best knowledge of Assignor, there is no default on the part of any party to the Governing Documents and no event has occurred and is continuing which, with the passage of time or the giving of notice or both or neither would constitute a default under the Governing Documents; and

(viii) by virtue of the execution and delivery by Assignor of this Agreement, the Lender will obtain a valid and perfected lien upon and security interest in all of the Collateral as security for the repayment of the Obligations, prior to the rights of all other parties and all other liens and encumbrances thereon and security interests therein.

(ix) except for the encumbrances evidenced in Exhibit D, attached hereto, to Assignor's knowledge, there are no other encumbrances against the Property

(x) the Pledged Company owns 100% interest in Toyram, LLC, which owns a 100% interest in LA Hotel Venture, LLC.

(b)     Except as set forth in this Agreement, Assignor covenants and agrees that it will defend the Lender's right, title and security interest in and to the Collateral and the proceeds thereof against the claims and demands of all persons whomsoever, and Assignor covenants and agrees that he will have like title to and right to pledge any other property at any time hereafter pledged or assigned to the Lender as additional Collateral hereunder and will likewise defend the right thereto and security interest therein of the Lender.

11.     Assignor's Obligations Absolute. The obligations of Assignor under this Agreement shall be absolute and unconditional, and shall remain in full force and effect without regard to, and shall not be

released, suspended, discharged, terminated or otherwise affected by, any circumstance or occurrence whatsoever, including, without limitation (a) any renewal, extension, amendment or modification of or addition or supplement to or deletion from the Note, or any other instrument or agreement referred to therein, or any assignment or transfer of any thereof; (b) any waiver, consent, extension, indulgence or other action or inaction under or in respect of any such agreement or instrument or this Agreement; (c) any furnishing of any additional security to the Lender or any acceptance thereof or any release of any security by the Lender; (d) any limitation on any party's liability or obligations under any such instrument or agreement or any invalidity or unenforceability, in whole or in part, of any such instrument or agreement or any term thereof; or (e) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to any Assignor, or any action taken with respect to this Agreement by any trustee or receiver, or by any court, in any such proceeding, whether or not any Assignor shall have notice or knowledge of any of the foregoing.

12.    Release; Termination. At the time of repayment and performance by the Assignor, as applicable, of the Obligations in full, the Lender agrees to take such actions, at the expense of Assignor, as Assignor may reasonably request to release from the lien of this Agreement the Collateral and to assign, transfer and deliver to Assignor (without recourse and without any representation or warranty) such of the Collateral as may be in the possession of the Lender and as has not theretofore been sold or otherwise applied, together with any moneys at the time held by the Lender hereunder.

13.    Notices. Except as otherwise expressly provided herein, all notices, certificates, reports or other communications hereunder shall be in writing (which shall include facsimile communications). Notices shall be sent by registered or certified mail, return receipt requested, facsimile transmission or hand delivery (including by overnight courier service), addressed as follows:

<div style="margin-left:2em">

if to the Lender:        MDT Enterprises LLC
                         8900 W. Olympic Blvd.
                         Beverly Hills, CA 90211
                         Attn: Mark Tavakoli
                         Telecopier: (310) 285-9508

if to the Assignor:      Namco Capital Group, Inc.
                         12121 Wilshire Blvd., Suite 1400
                         Los Angeles, CA 90025
                         Attention: Hamid Taba
                         Telecopier: (310) 207-6308

</div>

Notices shall be deemed to have been given when delivered by hand, when transmitted by facsimile transmission, receipt confirmed, or three (3) Business Days after mailing. Any party, by notice given as provided in this Paragraph 13, may designate any further or different address to which subsequent notices or other communications shall be sent.

14.    Consent to Jurisdiction. To the extent permitted by law, Assignor hereby irrevocably

(i) consents to any suit, action or proceeding with respect to this Agreement being, at the option of the Lender, brought in any court of competent jurisdiction located in the State of California, as the Lender may elect;

(ii) waives any objection that it may have now or hereafter to the venue of any such suit, action or proceeding in any such court and any claim that any of the foregoing have been brought in an inconvenient forum;

(iii) (a) acknowledges the competence of any such court, (b) submits to the jurisdiction of any such court in any such suit, action or proceeding, and (c) agrees that the final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon it and may be enforced in any court by a suit upon such judgment, a certified copy of which shall be conclusive evidence of its liability;

(iv) submits to the non-exclusive jurisdiction of the State and Federal Courts in California and agrees that service of process in any suit, action or proceeding brought in any such court may be made by mailing a copy of such process by registered or certified mail postage prepaid, return receipt requested to the address shown above or to any other address of which he shall have given written notice to the Lender; and

(v) waives all claims of error by reason of any service effected in accordance with the provisions of subparagraph (iv) above and agrees that such service shall be deemed in every respect effective service upon it in any suit, action or proceeding and shall be taken and held to be valid personal service upon or personal delivery to it, to the fullest extent permitted by law.

15.   Miscellaneous.  This Agreement shall be binding upon the successors and assigns of the Assignor and shall inure to the benefit of and be enforceable by the Lender and its successors and assigns. This Agreement may be changed, waived, discharged or terminated only by an instrument in writing signed by the parties hereto. **THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH AND BE GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.** The headings in this Agreement are for purposes of reference only and shall not limit or define the meaning hereof. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which shall constitute one instrument. In the event that any provision of this Agreement shall prove to be invalid or unenforceable, such provision shall be deemed to be severable from the other provisions of this Agreement which shall remain binding on all parties hereto.

16.   Attorneys Fees.  In the event of any dispute between the parties arising out of this Agreement, the prevailing party shall be paid reasonable attorney's fees it incurred in connection with resolution of the dispute by the other party.

17   Waivers.  No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

18.   **FINAL AGREEMENT. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

IN WITNESS WHEREOF, Assignor has caused this Agreement to be executed as of the date
first above written.

Ezri Namvar

EXHIBIT A

Promissory Notes

## EXHIBIT B

### Property Description

Name:        Marriott Hotel – Los Angeles

Address:     331-333 S. Figueroa St.
             Los Angeles, CA 90071-1001

APN:         5151-011-036

Legal Description:

LOT 1 OF TRACT NO. 21788, IN THE CITY OF LOS ANGELES, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 793 PAGES 94
AND 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ANY AND ALL PORTIONS OF THIRD STREET, FOURTH
STREET AND FIGUEROA STREET, AS SHOWN ON THE MAP OF SAID TRACT NO.
21788, AS RESERVED BY THE COMMUNITY REDEVELOPMENT AGENCY OF THE
CITY OF LOS ANGELES, CALIFORNIA, IN DEED RECORDED DECEMBER 24, 1980 AS
INSTRUMENT NO. 80-1290114, OFFICIAL RECORDS.

ALSO EXCEPT THEREFROM ALL OIL, GAS, AND MINERAL SUBSTANCES, WITHOUT
RIGHT OF SURFACE ENTRY, AS EXCEPTED OR RESERVED IN THE FOLLOWING
DEEDS:

OCTOBER 7, 1964 AS INSTRUMENT NOS. 1160, 1161, 1162 AND 1165, IN BOOK D2655
PAGES 1, 3, 5 AND 8 OF OFFICIAL RECORDS.

OCTOBER 9, 1964 AS INSTRUMENT NO. 1492 IN BOOK D2658 PAGE 192, OFFICIAL
RECORDS.

MARCH 5, 1963 AS INSTRUMENT NO. 1600 IN BOOK D1941 PAGE 835, OFFICIAL
RECORDS.

APRIL 16, 1963 AS INSTRUMENT NO. 1599 IN BOOK D1995 PAGE 29, OFFICIAL
RECORDS.

MAY 25, 1962 AS INSTRUMENT NO. 1856 IN BOOK D1627 PAGE 55, OFFICIAL
RECORDS.

OCTOBER 16, 1961 AS INSTRUMENT NO. 2564 IN BOOK D1387 PAGE 757, OFFICIAL
RECORDS.

JANUARY 5, 1962 AS INSTRUMENT NO. 1939 IN BOOK D1476 PAGE 49, OFFICIAL
RECORDS.

Plat Map Attached.

Exhibit  B-1



Exhibit B-2





Exhibit 15-3

Exhibit B-4



Exhibit C

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

310-282-9467

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Barry Weisz, Esq. c/o Silver & Freedman, APLC
2029 Century Park East
Los Angeles, CA 90067
USA

DOCUMENT NUMBER: 18869910002
FILING NUMBER: 08-7176321904
FILING DATE: 10/24/2008 09.47
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|----|---------------------------|------------|-------------|--------|
| | NAMVAR | EZRI | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---------------------|------|-------|-------------|---------|
| 12121 Wilshire Blvd., Suite 1400 | Los Angeles | CA | 90025 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any □ NONE |
|----------------------|-------------------|--------------------------|----------------------------------|------|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME
NAMARI LLC

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|----|---------------------------|------------|-------------|--------|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---------------------|------|-------|-------------|---------|
| 12121 Wilshire Blvd., Suite 1400 | Los Angeles | CA | 90025 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION Limited Liability Company | 2f. JURISDICTION OF ORGANIZATION CA | 2g. ORGANIZATIONAL ID#, if any □ NONE CA200632510211 |
|----------------------|-------------------|----------|------|------|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
Shaw Blackstone Limited Liability Company

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|----|---------------------------|------------|-------------|--------|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---------------------|------|-------|-------------|---------|
| c/o Mark Tavakoli, MDT Enterprises, 8900 W. Olympic Blvd. | Beverly Hills | CA | 90211 | USA |

4. This FINANCING STATEMENT covers the following collateral:

Collateral means all of the following, now existing or hereafter acquired: five percent (5%) of NAMARI LLC (the "Pledged Company"), including, without limitation (i) all payments of whatever nature to become due to Debtor in respect of such five percent interest in and under the operating agreement of the Pledged Company (the "Governing Documents"), (ii) Debtor's respective claims, rights, powers, privileges, security interests, liens and remedies under the Governing Documents, (iii) Debtor's respective rights under the Governing Documents to make determinations, to exercise any election (including, but not limited to, election of remedies) or option to give or receive any notice, consent, amendment, waiver or approval together with full power and authority to demand, receive, enforce, collect or receipt for any of the foregoing or any property of the Pledged Company to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action which in the opinion of Secured Party may be necessary or advisable in connection with any of the foregoing;

5. ALT DESIGNATION: □ LESSEE/LESSOR □ CONSIGNEE/CONSIGNOR □ BAILEE/BAILOR □ SELLER/BUYER □ AG. LIEN □ NON-UCC FILING

| □ 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] □ All Debtors □ Debtor 1 □ Debtor 2 |
|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY

EXHIBIT 4

Page 2

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME<br>NAMVAR | FIRST NAME<br>EZRI | MIDDLE NAME, SUFFIX |

**10. MISCELLANEOUS:**

DOCUMENT NUMBER: 18869910002
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME<br>TOYRAM LLC | | | |
|---|---|---|---|
| OR 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 11c. MAILING ADDRESS<br>12121 Wilshire Blvd., Suite 1400 | CITY<br>Los Angeles | STATE<br>CA | POSTAL CODE<br>90025 | COUNTRY<br>USA |
|---|---|---|---|---|

| 11d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 11e. TYPE OF ORGANIZATION<br>Limited Liability Company | 11f. JURISDICTION OF ORGANIZATION<br>CA | 11g. ORGANIZATIONAL ID#, if any<br>CA200632610018 ☐ NONE |
|---|---|---|---|---|

**12. ☑ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

| 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 12b. INDIVIDUAL'S LAST NAME<br>Hagnazarzadeh | FIRST NAME<br>David | MIDDLE NAME | SUFFIX |

| 12c. MAILING ADDRESS<br>c/o Mark Tavakoli, MDT Enterprises, 8900 W. Olympic Blvd. | CITY<br>Beverly Hills | STATE<br>CA | POSTAL CODE<br>90211 | COUNTRY<br>USA |
|---|---|---|---|---|

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14. Description of real estate:**

**16. Additional collateral description:**

**15.** Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years
☐ Filed in connection with a Public-Finance Transaction - effective 30 years

# UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| 19. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| 19a. ORGANIZATION'S NAME | | |
| OR 19b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
| NAMVAR | EZRI | |

| 20. MISCELLANEOUS: |
|---|
| |

DOCUMENT NUMBER: 18869910002
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

| 21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (21a or 21b) - do not abbreviate or combine names | | | |
|---|---|---|---|
| 21a. ORGANIZATION'S NAME LA HOTEL VENTURE, LLC | | | |
| OR 21b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 21c. MAILING ADDRESS 12121 Wilshire Blvd., Suite 1400 | CITY Los Angeles | STATE CA   POSTAL CODE 90025 | COUNTRY USA |
| 21d. SEE INSTRUCTIONS   ADD'L DEBTOR INFO | 21e. TYPE OF ORGANIZATION Limited Liability Company | 21f. JURISDICTION OF ORGANIZATION CA | 21g. ORGANIZATIONAL ID#, if any CA200632610055   ☐ NONE |

| 22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (22a or 22b) - do not abbreviate or combine names | | | |
|---|---|---|---|
| 22a. ORGANIZATION'S NAME | | | |
| OR 22b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |
| 22d. SEE INSTRUCTIONS   ADD'L DEBTOR INFO | 22e. TYPE OF ORGANIZATION | 22f. JURISDICTION OF ORGANIZATION | 22g. ORGANIZATIONAL ID#, if any   ☐ NONE |

| 23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (23a or 23b) - do not abbreviate or combine names | | | |
|---|---|---|---|
| 23a. ORGANIZATION'S NAME | | | |
| OR 23b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |
| 23d. SEE INSTRUCTIONS   ADD'L DEBTOR INFO | 23e. TYPE OF ORGANIZATION | 23f. JURISDICTION OF ORGANIZATION | 23g. ORGANIZATIONAL ID#, if any   ☐ NONE |

| 24. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (24a or 24b) | | | |
|---|---|---|---|
| 24a. ORGANIZATION'S NAME | | | |
| OR 24b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 24c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |

| 25. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (25a or 25b) | | | |
|---|---|---|---|
| 25a. ORGANIZATION'S NAME | | | |
| OR 25b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 25c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |

**PROOF OF SERVICE**
*In Re: Ezri Namvar*
*2:08-bk-34349-BR*

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 15821 Ventura Boulevard, Suite 515, Encino, California 91436. On August 11, 2009, I served the following document(s) described as **CREDITOR COMPLAINT TO EXCEPT DEBT FROM DISCHARGE PURSUANT TO 11 U.S.C. §523(a)(2)(A) and §523 (a)(6)** on all interested parties to this action, as follows:

☒    by placing ☐ the original ☒ a true copy
thereof enclosed in sealed envelopes addressed as follows:

SEE ATTACHED SERVICE LIST

☒    **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with THE GERSH LAW FIRM, INC.'s practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Encino, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to _____ for delivery to the above address(es).

☐    **BY FAX:** I caused the above-referenced document to be transmitted via facsimile from Fax No._____ to Fax No._____ directed to _____. The facsimile machine I used complies with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2005(1), I caused the machine to print a record of the transmission, a copy of which is attached to this declaration.

☒    **BY E-MAIL:** I caused the above-referenced document to be transmitted via e-mail from srobertson@gershlegal.com to service list below.

☐    **BY PERSONAL SERVICE:** I personally delivered such envelope by hand to the offices of the addressee(s).

☒    [State]    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐    [Federal]    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 11, 2009, at Encino, California.

SONJA ROBERTSON

THE GERSH LAW FIRM, INC.

THE GERSH LAW FIRM, INC.

# SERVICE LIST

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 East Temple St., Suite 1660
Los Angeles, CA 90012
***Hand Delivery***

**Served via U.S. Mail**

Namco Capital Group, Inc.
12121 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025
Debtor

Ezri Namvar
12121 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025
Debtor

Ilana Namvar
12121 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025

Leonard M. Shulman
Melissa R. Davis
26632 Towne Center Drive, Suite 300
Foothill Ranch, CA 92610
Atty for Official Committee of Unsecured
Creditors re Ezri Namvar

U.S. Trustee Offices
725 South Figueroa  Street, Suite 2600
Los Angeles, CA 90017

Gillian N. Brown
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067

Stephen F. Biegenzahn
Law Offices of Stephen F. Biegenzahn
4300 Via Marisol, Suite 764
Los Angeles, CA 90042
Atty of Ezri Namvar

Joel Samuels
Sidley, Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013

## Served Via E-Mail

- Howard J. Weg     hweg@pwkllp.com
- Richard K. Diamond     rdiamond@dgdk.com;eisrael@dgdk.com;
-     uraan@dgdk.com;
- 

(Attorneys for R. Todd Nielson, Ch. 11 Trustee)
- Gillian N. Brown     gbrown@pszjlaw.com
- Shirley Cho     scho@pszjlaw.com
- 
- Russell Clementson     russell.clementson@usdoj.gov
- Melissa Davis     mdavis@shbllp.com
- 

(Official Unsecured Creditors' Committee)
- Sanford Frey     Sfrey@cmkllp.com
- Eric P Israel     eisrael@dgdk.com
- Stuart I. Koenig     Skoenig@cmkllp.com
- Dare Law     dare.law@usdoj.gov
- Jennifer Leland     jleland@pwkllp.com
- Monserrat Morales     mmorales@pwkllp.com
- David M. Poitras     dpoitras@jmbm.com

2

| | | |
|---|---|---|
| • | Bruce S. Schildkraut | bruce.schildkraut@usdoj.gov |
| • | Benjamin Seigel | Seigel@buchalter.com; IFS_filing@buchalter.com |
| • | David B. Shemano | dshemano@pwkllp.com |
| • | Beth Ann R Young | bry@lnbrb.com |
| • | Ron Maroko | ron.maroko@usdoj.gov |
| • | R. Todd Neilson | tneilson@ecf.epiqsystems.com;vdoran@lecg.com; sgreenan@lecg.com |
| • | Sanford Frey | Sfrey@cmkllp.com |
| • | Stuart Koenig | Skoenig@cmkllp.com |

THE GERSH LAW FIRM, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28